Van Dyke *v.* Van Dyke.

---

ELIZABETH A. VAN DYKE

*v.*

FRANK VAN DYKE and others.

1. Where an administrator, party to a foreclosure suit for sale of the land of his intestate, after request by the creditors, refuses to apply to have the sale set aside, a creditor, on behalf of himself and other creditors, may obtain relief on petition. He may be permitted to intervene in the name of the administrator, on such terms, if any, as the court may see fit to impose for the indemnity of the latter, or, if occasion require, in his own name.

2. Sale set aside on the ground of gross inadequacy of price, coupled with fraudulent conduct on the part of the purchaser in preventing competition.

---

Motion on petition to set aside sheriff's sale of mortgaged premises under *fieri facias* issued out of this court.

Van Dyke *v.* Van Dyke.

*Mr. G. O. Vanderbilt* and *Mr. J. T. Bird*, for petitioner.

*Mr. W. J. Gibby*, for respondent.

THE CHANCELLOR.

Elizabeth A. Van Dyke, the complainant in this suit, obtained a final decree for the sale of certain mortgaged premises, being a farm of which her husband died seized, in the county of Mercer, to raise and pay to her the sum of $5,928.02, besides interest and costs. The premises were sold, under the execution, on or about the 14th of February, 1878, by the sheriff, to her, for the sum of $1,100, and he afterwards conveyed the premises to her accordingly. They were sold subject to a prior mortgage of $5,000 principal, whereon there was due, at the time of the sale, about $300, for interest. The petitioner is one of the creditors of the estate of William Van Dyke, deceased. Mr. Van Dyke's property consisted of the mortgaged premises and about $2,000 of personal property. He died in May, 1877, intestate, and James B. Coleman was appointed his administrator. The administrator is a party to this suit.

The estate is still unsettled. The complainant has put in her claim against the estate for the amount due on the bond secured by her mortgage, after crediting the amount raised by the sale of the mortgaged premises. If the sheriff's sale be permitted to stand, the estate is insolvent. The petitioner alleges that the premises were sold at a grossly inadequate price, and that they would have brought a much larger sum of money but for the fraudulent contrivance of the complainant to prevent bidding on the part of the creditors of the estate, both by stating, publicly, that she intended to take the mortgaged premises at the sale in satisfaction of the mortgage, and by inducing one person who, otherwise, would have bid upon the property a large sum of money, to refrain from bidding, upon the promise by her to him that, if he would do so, she would pay his debt; he being a creditor of her husband's estate.

12

Van Dyke *v.* Van Dyke.

The petitioner alleges that, after the sale, he applied to the administrator to take action with a view to setting aside the sale upon the grounds before mentioned, but the latter declined to do so, alleging, as an excuse, his old age and physical infirmities, and an indisposition to have anything to do with the matter.

The respondent insists that the petitioner has no standing in this suit, and cannot be heard upon this application, but that the application can only be made by the administrator. The administrator is the mere representative of the creditors and next of kin. In this case, the estate being insolvent if the sale stands, he practically represents the creditors alone. By refusing to take the action necessary for their protection in this suit, he leaves them without remedy, unless they can be heard notwithstanding his refusal.

The petitioner prays that he may be admitted a party to the suit. That, however, is not necessary to the relief which he seeks. He appears in behalf of the creditors of the estate, and might be permitted to do so, under the circumstances, in the name of the administrator, the court imposing such terms, if any, as it might deem proper for the indemnity of the administrator in the premises. The creditors may avail themselves of the administrator's name and standing in the suit for their protection. *Receivers &c.* v. *Wortendyke, 12 C. E. Gr. 658.* And, if occasion require, may be permitted to intervene in their own names to protect their interests. *Calvert on Parties 58; Drew* v. *Harman, 5 Price 319; Houlditch* v. *Marquis of Donegal, 1 Sim. & Stu. 491; Story's Eq. Pl.* § *365; Williamson* v. *N. J. Southern R. R. Co., 10 C. E. Gr. 13.*

That the mortgaged premises were sold at a grossly inadequate price is entirely clear, from the evidence. They were struck off to the complainant at $1,100, subject to the principal and interest ($5,300) of the prior mortgage. They were reasonably worth from $10,000 to $11,000. As before stated, the sale took place on the 14th of February, 1878. On or about the 5th of April following, Enoch Perrine

Van Dyke v. Van Dyke.

offered the complainant $10,000 for the premises, which she refused. He says he had made up his mind to give her $10,500, if she would not take less. James English testifies that, about three weeks after the sale, he asked the complainant if she would take $10,000 for the property, and she said that she would not, because it was worth more. He also says that, about a month before the sale took place, he asked her what she thought the mortgaged premises were worth, and she said that they ought to bring $11,000. The petitioner testifies that he was confined to his house by sickness, and was, therefore, unable to attend the sale; but, if he had been present, he would have bid the property up to $10,500, including therein the amount of the prior mortgage, and he swears that the premises are, at this time, worth that sum. Samuel E. Perrine fixes the value of the property about the time of the sale, at from $10,000 to $10,500. The complainant told him that she was unwilling to take $10,500 for the farm, because, as he understood her, she thought she ought to be paid for the crops, also. John H. Coleman testifies that he was present at the sheriff's sale, and had some conversation with the complainant there, relative to bidding upon the property, and as to the amount which it ought to bring, and that the complainant said that, before she would let it be sold to go out of her possession, she would give $10,000 for it. He says she requested him to bid for her, and told him that she did not want him to let the property be struck off, except on her bid, for less than $10,000. John Wyckoff also testifies that the farm was worth about $10,000.

The inadequacy of price, however, would not be, in itself, sufficient reason for setting aside the sale; but there is clear evidence of successful effort on the part of the complainant to prevent competition, in order that she might become the purchaser of the farm, at the sale, at a price less than its value, or than it would have otherwise brought.

The testimony of Enoch Perrine is clear and unequivocal. He testifies that he is the brother-in-law of the complain-

ant; that he heard her repeatedly say, before the day of sale, that she intended to bid the mortgaged premises up to the amount of her claim, before she would allow anybody else to take them. He says that he has a claim of about $430 against the estate of William Van Dyke, deceased, for money lent to the latter, and that, a few days before the sale took place, the complainant came to his house and said to him that, if he would not bid on the mortgaged premises at the sale, she would pay the claim which he held against the estate of her husband; that he entered into an agreement with her, a few days before the sale, not to bid on the property, in consideration of her paying him his claim, and that he attended the sale of the property, but did not bid thereon. He further says that, if he had not entered into that agreement with her, he would have bid the property up to $10,000, including therein the amount of the prior mortgage. To the same effect is the testimony of her sister, the wife of Enoch Perrine. She says that, before the sale (and she thinks it was in the month of December, 1877) the complainant came to her house alone, and had a conversation with her husband (at which the witness, but no one else, was present) in regard to the estate of Mr. Van Dyke, and that the complainant then said that she did not want Mr. Perrine to bid on the farm against her; that she would pay him his claim if he would not do so; that her husband (Mr. Perrine) said that he would not bid on the farm if the complainant did not want him to do so, and that the understanding was that she was to pay his claim against the estate in full.

This conversation, to which Mr. and Mrs. Perrine testify, is not denied by the complainant. She was sworn as a witness under the petition, and, when interrogated as to the conversation, merely said that she had no recollection of having had it, but did not deny that she had made the offer and agreement to and with Perrine, testified to by him and his wife. It is manifest that, as the result of this agreement, she was enabled to obtain the farm at a very inad-

equate price. Enoch Perrine swears, as before stated, that, but for the agreement, he would have bid upon the property, and would have given for it $10,000, if necessary. He attended the sale, but did not bid, because of the agreement. Under the circumstances, the sale should be set aside.